UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

VONNITA RENEE BISHOP,  　　　　　　　　Case No. 11-31919-dof
　　　　　　　　　　　　　　　　　　　　Chapter 13 Proceeding
　　　　Debtor.　　　　　　　　　　　　　Hon. Daniel S. Opperman
_____/

OPINION SUSTAINING IN PART AND OVERRULING
IN PART DEBTOR'S OBJECTION TO PROOF OF CLAIM OF DANTE BISHOP

Introduction

Dante Bishop, the former husband of the Debtor, filed a proof of claim in the amount of $64,159.98, based on amounts he claims are owed to him pursuant to a Judgment of Divorce ("JOD") signed by the Oakland County Circuit Court on October 25, 2010, which followed an Opinion and Order of that same Court dated September 24, 2010 ("Opinion and Order"). Mr. Bishop also seeks priority status because his claim can be categorized as a domestic support obligation. The Debtor objects to this claim, asserting that Mr. Bishop's claim is not factually supported and is not entitled to priority.

Facts

The claimant and the Debtor were married, but divorced in 2010 by way of proceedings initiated by the Debtor as a Plaintiff. Pertinent parts of this Opinion and Order include:

> Defendant shall pay to Plaintiff child suport in the amount of $1,011.33 per month for two children, and $677.18 per month for one child. In addition, Plaintiff shall be responsible for 57% and Defendant 43% of extraordinary health care expenses. This order shall take effect October 1, 2010.

**Spousal Support**

> The parties have agreed that no spousal support shall be paid by either party and spousal support is forever barred.

1

. . .

I find that Defendant is more at fault than Plaintiff for the breakdown of the marriage; however, not to such a degree that an equitable division of the marital estate would be inappropriate. I find that general principles of equity dictate that an approximately equal division of the assets in the marital estate is appropriate to meet the needs of the parties in this case. Likewise, the parties' marital debts will be divided on a fairly equal basis.

**Real Property**

. . .

The marital home located at 24141 Elizabeth Lane, Novi, MI 48734, went through foreclosure and sold at a Sheriff's sale on May 4, 2010, for $315,000. See Plaintiff's Exhibit 5. The statutory six-month redemption period will expire on or about November 4, 2010. There was no equity in the home as the parties had refinanced the mortgage several times. The parties shall share any deficiency equally and shall each pay half of any property taxes and household insurance that are due.

. . .

There was a Chrysler minivan which Plaintiff left at the marital home when she moved out in January. The minivan was repossessed because no payment was made after December, 2009. Defendant testified that $4,237.29 is owed on the minivan. The parties will be equally responsible for any debt on the minivan.

Plaintiff turned in a Hummer in February, 2009. Defendant testified that $1,911.58 is owed to GMAC for this vehicle. The parties are equally responsible for the debt on this vehicle.

The JOD restated the obligations consistently with the Opinion and Order.

At the evidentiary hearings, the Court admitted Exhibit 10, an updated summary sheet of the amounts Mr. Bishop claimed were owed to him. This sheet set forth the following amounts and information:

| Item # | Judgment Amount | Proof of Claim Amount | Paid | Due From Debtor At Aug 29, 2012 | Description of Judgment Items |
|---|---|---|---|---|---|
| 1 | $114,137.56 | $57,068.78 | $114,137.56 | $57,068.78 | 1099 Income Recognized by Creditor |
| 2 | $732.12 | $366.06 | $732.12 | $366.06 | Comerica Bank |
| 3 | $5,122.40 | $2,561.20 | $1,000.00 | $500.00 | Taxes - Garelik, Porvin |
| 4 | $1,911.58 | $955.79 | – | – | GMAC - Hummer Balance |
| 5 | $4,237.29 | $2,118.65 | – | – | Chrysler Minivan |
| 6 | $1,200.00 | $600.00 | $600.00 | – | DTE Balance - Paid by Debtor |
| 7 | $650.00 | $325.00 | $650.00 | $650.00 | Consumer's Energy Balance |
| 8 | $185.00 | $92.50 | $185.50 | $92.50 | S&M Heating Balance |
| 9 | $140.00 $7,000.00 | $70.00 $3,500.00 | – $1,000.00 | – $500.00 | 6 City of Detroit Craig Barbret |
| 10 | $1.00 | $1.00 | – | – | Real Estate Taxes - To Investigate |
| 11 | $1.00 | $1.00 | – | – | Mortgage Insurance - To Investigate |
| Total | $135,317.95 | $67,659.98 | $118,305.18 | $59,177.34 | |

Mr. Bishop explained that some of these amounts were tentative, such as the 1099 income recognized by creditor in the amount of $114,137.56. This amount is the deficiency owed by Mr. Bishop and the Debtor that was reported as income to each. Neither the Debtor or Mr. Bishop have

3
11-31919-dof    Doc 72    Filed 04/29/13    Entered 04/29/13 15:59:49    Page 3 of 7

paid the deficiency or the tax on the deficiency. Mr. Bishop did pay certain debts in full, such as the Comerica Bank amount of $732.12, Consumers Energy bill of $650.00 and the S&M Heating bill of $185.50. For other debts, Mr. Bishop paid his portion, but the Debtor's portion remained unpaid. The remaining debts remain totally outstanding or are unknown.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate) and (I) (determination of the dischargeability of particular debts). The issues in this case arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), and later by the Sixth Circuit Court of Appeals in *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## Applicable Statutes

11 U.S.C. § 523(a)(5) and (15) state:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> . . .
>
> (5) for a domestic support obligation;
>
> . . .
>
> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit;

4

11 U.S.C. § 101(14A) states:

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is —
>
>   (A) owed to or recoverable by –
>     (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>     (ii) a governmental unit;
>   (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor of such child's parent, without regard to whether such debt is expressly so designated;
>   (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of –
>     (i) a separation agreement, divorce decree, or property settlement agreement;
>     (ii) an order of a court of record; or
>     (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>   (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 1328(a)(2) states:

> (a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
>
> . . .
>
>   (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);

## Analysis

### Discharge and Priority Status

The Court initially finds that none of the obligations included in Mr. Bishop's claim are those that fit in Section 523(a)(5). First, both the Opinion and Order and Judgment of Divorce state that no spousal support is or can be awarded. While child support was awarded, it was awarded to the Debtor and from Mr. Bishop. There are no Section 101(14A) obligations involved here. At best, the amounts claimed by Mr. Bishop arise from the JOD, which, by virtue of 11 U.S.C. §1328(a)(2), are dischargeable in the Debtor's Chapter 13 and are not entitled to priority by 11 U.S.C. § 507(a)(1)(A) and (B). Although Mr. Bishop should have initiated an adversary proceeding to determine the dischargeability of the obligations owed to him by the Debtor, the Court's conclusion as to priority under Section 507 requires a finding under Section 101(14A), so this issue can be addressed in this forum.

### Amount of Claim

Mr. Bishop has clearly stated the amounts owed to him of $366.06, $325.00, and $92.50 for the respective Comerica Bank, Consumer's Energy, and S&M Heating bills that he paid in total, thus obligating the Debtor in the total amount of $783.56. He has not shown that he is entitled to payment for any other amounts because the record is incomplete. Three examples are noteworthy.

First, Mr. Bishop seeks $57,068.78 from the Debtor for one-half of the 1099 income resulting from the deficiency balance regarding their home. The true amount, if any, is the tax paid on that income, not the income itself. Second, Mr. Bishop claims he paid his portion of the Garelik, Porvin bill, DTE bill, and Craig Barbret obligations, but makes no showing that any of these entities or individuals have requested payment of the Debtor's portion from him. There is therefore no evidence that Mr. Bishop has incurred any additional costs. Third, Mr. Bishop estimates amounts that may be owed by him and the Debtor for GMAC, the Chrysler minivan, the City of Detroit, real

estate taxes and mortgage insurance, but has not provided any documents supporting the amounts claimed and, in some instances, notes that more investigation is necessary.

Mr. Bishop filed his proof of claim on August 22, 2011, and has had months to investigate and gather the support needed to substantiate his claims. He has not done so, leaving the Court with no other alternative than to sustain the Debtor's objection.

## Conclusion

Mr. Bishop has a claim of $783.56 that is a general unsecured claim under 11 U.S.C. § 523(a)(15). His claim is not entitled to priority under 11 U.S.C. § 507(a)(1)(A) or (B) and is not excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(5) and 1328(a)(2). The Debtor's objection is overruled to the extent of the $783.56, but sustained as to the remainder of Mr. Bishop's claim.

Counsel for the Debtor is directed to prepare and present an Order consistent with this Opinion.

Not for publication.

**Signed on April 29, 2013**

                                                   **/s/ Daniel S. Opperman**
                                                   **Daniel S. Opperman**
                                                   **United States Bankruptcy Judge**